UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY ANN EWING,

                Petitioner,

v.                                    CASE NO. 2:08-CV-12372
                                    HONORABLE NANCY G. EDMUNDS

HEIDI WASHINGTON,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS
AND DENYING A CERTIFICATE OF APPEALABILITY**

**I.      Introduction**

       Shirley Ann Ewing, a state inmate currently incarcerated at the Huron Valley Correctional

Facility in Ypsilanti, Michigan,  has filed a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254, asserting that she is being held in violation of her constitutional rights.  Petitioner

was convicted of second-degree murder, two counts of assault with intent to do great bodily harm

less than murder, and possession of a firearm during the commission of a felony following a jury

trial in the Genesee County Circuit Court in 2003.  Petitioner is serving concurrent prison terms

of 31 years, three months to 50 years' imprisonment for the second-degree murder conviction and

five to ten years' imprisonment for each assault with intent to do great bodily harm less than

murder conviction.  Petitioner also received a consecutive two-year sentence for possession of a

firearm during the commission of a felony.  In her application, Petitioner raises claims concerning

prosecutorial misconduct and sentencing.  For the reasons stated, the Court denies the petition for

a writ of habeas corpus.  The Court also denies a certificate of appealability.

## II.    Facts and Procedural History

On October 26, 2002, Petitioner was at the house of her boyfriend, Leon Smithers, in the City of Flint.  Petitioner's brother, Booker T. Washington, Jr., Alan Sharp, and Robert Bonner were also at Smithers's house that day.  Late in the afternoon, Smithers asked Petitioner to leave and an argument ensued.  Smithers then called the police and asked them to remove Petitioner from his home.  The police arrived at approximately 6:00 p.m., and, after an altercation between Petitioner and the police, Petitioner was arrested for trespassing and taken to the police station.  Petitioner was booked, issued an appearance ticket, and released at 8:00 p.m.

Petitioner's mother drove Petitioner home from the police station.  Petitioner then walked to Smithers's house.  When she entered Smithers's house, Smithers was sitting in a chair by the door.  Washington and Sharp were also in the room.  Petitioner sat on Smithers's lap and they began to argue again.  As a result, Petitioner shot Smithers in the head, killing him.  Petitioner also shot Washington and Sharp.  After the shooting, Petitioner went to a bowling alley to meet with her bowling team.  Petitioner did not report the incident to the police.

At trial, Flint Police Officer Brian Murphee testified that he responded to Smithers's house on two occasions on the night of the shooting.  First, Officer Murphee responded to the 911 call in which Smithers requested the police to remove Petitioner from his home.  Officer Murphee testified that, at that time, Petitioner appeared agitated and upset.  He also testified that she smelled of alcohol and did not complain of any assault or threat by Smithers.  At approximately 8:30 p.m., Officer Murphee was dispatched to Smithers's house a second time.  Upon entering Smithers's house, he found Smithers, Washington, and Sharp, each of whom had been shot.

Sharp testified that he was at Smithers's house the day of the shooting.  He, Petitioner,

Washington, and Bonner spent the day drinking, watching television, and playing cards. Throughout the day he heard Smithers and Petitioner bicker but did not see any weapons or hear Smithers threaten Petitioner. The bickering worsened and Smithers called the police, who came to Smithers's house and arrested Petitioner. When Petitioner returned to Smithers's house later that evening, Sharp heard a commotion between Smithers and Petitioner and then heard two shots. He turned and saw Petitioner with a gun. When he lunged for the gun, Petitioner shot him in his neck and chest. Sharp spent ten days in the hospital recovering from his injuries.

The prosecution also called Petitioner's brother, Washington. According to Washington, he was at Smithers's house on October 26, 2002 with Sharp, Bonner, and Petitioner. They spent the day watching television and drinking. Petitioner became intoxicated and argumentative. Smithers asked Petitioner to leave, but she refused, so Smithers called the police. As she was being taken away, Petitioner threatened the men that she was going harm them when she got out of jail. When Petitioner returned later that night, Petitioner took a handgun out of her pocket and shot Washington in the abdomen. Next, she shot Sharp. Finally, she approached Smithers and she shot him. Washington did not see Smithers with a gun or see Smithers threaten Petitioner.

Bonner also testified on behalf of the prosecution. He testified that he, Sharp, Smithers, Washington, and Petitioner were gathered at Smithers's house on October 26, 2002. Smithers asked Petitioner to leave. When she refused, Smithers called the police. While the police were arresting Petitioner, she told the police that she would kill Smithers upon her release from jail. Bonner was in the kitchen when Petitioner returned to Smithers's house. He overheard Petitioner tell Smithers that he would never call the police on anybody else. Bonner then heard six shots followed by the sound of a door slamming. He exited the kitchen and found Smithers and Sharp

3

in a chair.  Washington was standing and stated that he had been shot by Petitioner.  Bonner then called 911.

The defense called Flint Police Officer Terence Walker to testify.  He testified that at 6:01 p.m., he and Officer Murphee responded to a 911 call from Smithers's house.  As he approached the house, he heard a lot of arguing.  Officer Walker did not recall smelling alcohol on Petitioner's breath or seeing any alcohol containers in the house at the time of Petitioner's arrest.  He further testified that Petitioner uttered profanities at him and Officer Murphee, but he did not recall Petitioner threatening Smithers or anyone else in the house.  According to Officer Walker, Petitioner was calm when she was released from jail.

The defense also called several witnesses to testify to the alleged domestic abuse between Smithers and Petitioner.  One of those witnesses was Tonya Smithers, Smithers's estranged wife.  Tonya Smithers testified that Smithers had never fought with or threatened her.  Nor had she ever seen Smithers fight or argue with Petitioner.  Tonya Smithers did testify, however, that she obtained a personal protection order against her husband on October 3, 2002 because he had threatened to kill or physically injure her.

Petitioner also testified on her own behalf.  Petitioner had been dating Smithers for thirteen years.  She testified that Smithers abused her every week or two and twice he assaulted her with a gun.  According to Petitioner, Smithers drank daily and the more he drank, the more abusive he became.  Petitioner testified that, on the day of the shooting, she, Smithers, and their friends were drinking and playing cards.  Smithers told her to leave.  They argued, and Smithers called the police.  After an altercation between her and the police, the police arrested her.

According to Petitioner, while she was at the police station, Smithers repeatedly called her

4

cellular telephone, asking her to come back to his house so that they could talk.  So when

Petitioner got out of jail, she returned to the house.  She testified that sat on Smithers's lap, and he

told her to control her temper.  They began to argue again.  He slapped her, and she slapped him

back.  Then, Smithers punched her.  She knew that Smithers kept a gun under the chair he was

sitting in, so as he was punching and kicking her, she grabbed the gun and pointed it at him.

Petitioner testified that her intent was only to get Smithers to back away so that she could leave

the house.  As she was getting up from the floor, the gun discharged once, hitting Smithers in the

head.  Petitioner testified that her brother, Washington, who has a history of violence, called her

name.  As she turned in his direction, the gun discharged once more.  And when Sharp came at

her, Petitioner shot two times in his direction.  Petitioner dropped the gun, left the house, and

went to the bowling alley.  Petitioner did not call 911.

At the close of trial, Petitioner was convicted as set forth above and sentenced to

concurrent terms of 50 to 83 years' imprisonment for second-degree murder and five to ten years'

imprisonment for each count of assault with intent to do great bodily harm less than murder.

Petitioner also received a consecutive two-year sentence for possession of a firearm during the

commission of a felony.

After sentencing, Petitioner pursued a direct appeal in the Michigan Court of Appeals,

raising the following claims:

> I.   Appellant was denied her right to due process and a fair trial as a result of multiple
>      instances of the prosecutor's misconduct, where he improperly attempted to evoke
>      an emotional response from the jurors by appealing to their sympathy for the
>      complainant and to their civic duty to "deliver justice;" denigrated appellant and
>      defense counsel by calling appellant a "liar" who is "guilty as sin," her defense a
>      "bucket of whoppers," and her attorney "desperate;" and by vouching for the
>      credibility of the "innocent" complainants and responding police officers whose
>      "motive is to tell the truth."

5

II.   The trial court erred in finding as a matter of law that there were substantial and compelling reasons to depart from the statutory guidelines and abused its sentencing discretion in imposing a 600 to 1,000 month prison sentence for second-degree murder concurrent with two 60 to 120 month prison sentences for assault with intent to do great bodily harm less than murder, where the guidelines recommended minimum sentences between 225 and 375 months for the homicide and 29 to 57 months for the assaults.

The Michigan Court of Appeals affirmed Petitioner's convictions but remanded to the trial court for resentencing on the second-degree murder conviction. *People v. Ewing*, No. 252558, 2005 WL 658835 (Mich. Ct. App. Mar. 22, 2005). The Michigan Supreme Court denied leave to appeal because it was "not persuaded that the question presented should be reviewed . . . ." *People v. Ewing*, 474 Mich. 873, 703 N.W.2d 810 (2005).

On remand, the trial court recalculated the guidelines, which once again recommended a minimum sentencing range of 225 to 375 months. The trial court resentenced Petitioner to 375 months to 600 months for the second-degree murder conviction. Petitioner's other sentences were not changed. Petitioner filed a second appeal, presenting the following claim:

Due process entitles Defendant to resentencing where the trial court failed to adequately consider the domestic violence that appears to have occurred in the Defendant's relationship with her boyfriend, Mr. Smithers.

The Michigan appellate courts affirmed Petitioner's sentence. *People v. Ewing*, No. 267153, 2007 WL 704936 (Mich. Ct. App. Mar. 8, 2007); *leave den.* 479 Mich. 866, 735 N.W.2d 230 (2007).

Petitioner then filed the pending habeas corpus petition, asserting the following claims as grounds for relief:

I.   Appellant was denied her right to due process and a fair trial as a result of multiple instances of the prosecutor's misconduct, where he improperly attempted to evoke an emotional response from the jurors by appealing to their sympathy for the complainant and to their civic duty to "deliver justice;" denigrated appellant and

6

defense counsel by calling appellant a "liar" who is "guilty as sin," her defense a "bucket of whoppers," and her attorney "desperate;" and by vouching for the credibility of the "innocent" complainants and responding police officers whose "motive is to tell the truth."

II.     Due process entitled Defendant to resentencing where the trial court failed to adequately consider the domestic violence that appears to have occurred in the Defendant's relationship with her boyfriend, Mr. Smithers.

Respondent has filed an answer to the petition asserting that it should be denied because Petitioner's prosecutorial misconduct claims are procedurally defaulted and lack merit and because the resentencing claim is not cognizable on habeas review.

## III.   Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.  *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations.  28

U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that

---

[1]   28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11.

**IV.    Analysis**

A.    Prosecutorial Misconduct

In her first habeas claim, Petitioner asserts that she is entitled to habeas relief because the prosecutor engaged in several acts of misconduct. Specifically, Petitioner asserts that the prosecutor committed misconduct by evoking sympathy for the victims and the wife of the decedent, by appealing to the jurors to do their civic duty, by denigrating Petitioner and defense counsel, and by vouching for the credibility of the complainants and the responding police officers.

Respondent argues that these prosecutorial misconduct claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Petitioner's prosecutorial misconduct claims.

It is well-established that prosecutors must "'refrain from improper methods calculated to produce a wrongful conviction.'" *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). However, "[c]laims of prosecutorial misconduct are

9

reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Prosecutorial misconduct may warrant habeas corpus relief only if the misconduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "To constitute a denial of due process, the misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" *Byrd v. Collins*, 209 F.3d 486, 529-30 (6th Cir. 2000) (quoting *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997)). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett*, 117 F.3d at 964 (quoting *Serra v. Mich. Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

The first question to consider is whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley*, 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the Court must decide whether the improper acts were so flagrant as to warrant relief. *Id*. at 516. The Sixth Circuit applies a four-factor test to any inappropriate prosecutorial conduct to determine whether it was flagrant: "(1) whether the evidence against the defendant was strong, (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally." *Id*. (citation omitted).

Petitioner's first claim of prosecutorial misconduct is that the prosecutor evoked juror sympathy by expressing his condolences to the decedent's wife for the loss of her husband and eliciting questions on the heartbreak she sustained as a result of his death during cross-examination. Petitioner also asserts that the prosecutor appealed to the sympathy of the jury

10

during his closing argument by referring to the victims as innocent and stating that the decedent

would never eat another ice cream cone or spend another Christmas with his family.

The Michigan Court of Appeals, although finding that the claim was not properly

preserved, nevertheless reviewed the propriety of the prosecutor's conduct for plain error. The

Michigan Court of Appeals held, in pertinent part:

> These questions [to the decedent's wife] were not improper because they were relevant in light of defendant's evidence attempting to establish that Smithers was abusive toward women, and the prosecutor's offer of condolences to the victim's wife, while perhaps better kept to himself, was not plain error affecting defendant's substantial rights.
>
> The characterization of the victims as innocent was directly responsive to defendant's theory of the case that she acted in self-defense and that Booker Washington, one of the shooting victims, was lying about what had happened. These remarks were not improper.
>
> Defendant next asserts that the prosecutor improperly appealed to juror sympathy by stating in closing argument:
>
>> Ladies and Gentlemen, Mr. Smithers will never eat another ice cream cone, he will never spend another Christmas with his family, he is gone, and he is not coming back.
>
> The prosecution immediately attempted to correct this apparent appeal for sympathy by stating:
>
>> This trial is not about sympathy for Mr. Smithers. Mr. Smithers has friends and family who have that job. They're the ones who give sympathy.
>
> This statement may have assisted in dispelling any possible prejudice. Regardless, during jury instructions, the court cured any error by reminding the jurors to make their decision "based only on the evidence and only the law that this court gives to you, and not on your sympathies or your prejudices." The prosecutor's alleged attempt to arouse sympathy in the jury was not plain error affecting defendant's substantial rights.

*Ewing*, No. 252558 at *1-2.

11

The Michigan Court of Appeals' determination is not contrary to, nor an unreasonable application of, federal law or the facts. A prosecutor may not make remarks "calculated to incite the passions and prejudices of the jurors." *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991). In this case, the prosecutor's questions to the decedent's wife and the characterization of the complainants as "innocent" were not calculated to incite the jurors' passions and prejudices; they were calculated to attack particular theories of the defense.

To the extent that any of the prosecutor's remarks were improper, they were not flagrant. The remarks were relatively isolated and there was significant evidence of Petitioner's guilt presented at trial. Moreover, any prejudice to the defendant was dispelled by the prosecutor's statement that the trial was not about sympathy for the decedent and the trial court's instruction to the jurors to base their decision only on the evidence and the law, not on their sympathies or prejudices. *See* Trial Transcript, Oct. 22, 2003 at 969. Jurors are presumed to follow the court's instructions. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it."). Therefore, Petitioner is not entitled to habeas relief on this claim.

Second, Petitioner alleges that the prosecutor committed misconduct by appealing to the jurors to do their civic duty in his closing argument. Specifically, the prosecutor stated, "You are the only ones who can deliver justice, that is your job." Trial Tr., Oct. 22, 2003 at 936. The Michigan Court of Appeals held that the prosecutor's statement was not improper and that even if it was improper, the trial court's instruction to the jury to base its decision only on the evidence cured any impropriety. *Ewing*, No. 252558 at *2.

"'Unless calculated to incite the passions and prejudices of the jurors, appeals to the jury

12

to act as the community conscience are not per se impermissible.'" *Byrd v. Collins*, 209 F.3d 486,

539 (6th Cir.2000) (quoting *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir.1991)).  A

prosecutor does not overstep by appealing to the jurors' sense of justice.  *Bedford v. Collins*, 567

F.3d 225, 234 (6th Cir. 2009).  Petitioner has failed to show that the prosecutor made the

statement with the intention of inciting the passions or prejudices of the jurors.  The prosecutor's

language was not inflammatory nor does it appear intended to incite passions or prejudices.

Further, the trial court instructed the jury to base their decision only on the evidence and the law,

not on their sympathies or prejudices.  *See Cameron v. Pitcher*, 2001 WL 85893, *10 (E.D. Mich.

Jan. 4, 2001) (holding that jury instruction advising jurors they were required to decide facts on

basis of properly admitted evidence mitigated prosecutor's civic duty argument).  The Court finds

that the Michigan Court of Appeals' decision that the prosecutor's civic duty argument was not

improper was neither contrary to or an unreasonable application of clearly established federal

law.

　　　　Petitioner's next claim of prosecutorial misconduct is that the prosecutor repeatedly

denigrated Petitioner, her defense, and defense counsel throughout the trial.  In particular,

Petitioner alleges that the prosecutor denigrated Petitioner by calling her a liar who was telling a

"self-interested story," telling the jury that she was "guilty as sin," and referring to her several

times as "the Terminator" and "Miss Congeniality."  Tr., 10/22/03 at 907, 910, 915, 917, 921,

933, 935.  In his closing argument, the prosecutor stated:

> [H]ere is the whole bucket of my secretary's [candy] whoppers, we need 'em because,
> ladies and gentlemen, she got up on that stand yesterday and gave us a bucket of
> whoppers, and I wanna talk about 'em right now. . . Number one, first whopper, Miss
> Congeniality.
>
> 　　　. . . .

13

> So is what she says, was she Ms. Congeniality?  Are we going to believe her or are
> we gonna believe the evidence? . . . Ladies and gentlemen, her testimony to
> characterize herself as Ms. Congeniality is a big whopper.

Tr. 10/22/03 at 914-15, 917.   The prosecutor continued characterizing Petitioner's version of the

facts as "whoppers" numbered two through ten.  Petitioner also alleges that the prosecutor

denigrated defense counsel by arguing that defense counsel's efforts were "desperate."  Tr.

10/22/03 at 933.  And, Petitioner alleges that the prosecutor suggested that defense counsel was

trying to mislead the jury when the prosecutor stated that defense counsel was "trying to pull a

little rabbit out of the hat."  *Id.*

The Michigan Court of Appeals denied relief on this claim, finding that the prosecutor's

remarks did not rise to the level of prosecutorial misconduct.  The court explained in relevant part

as follows:

> The prosecutor's language, while harsh, was in response to the credibility contest that
> defendant initiated with her defense theory.  While the prosecutor's assertion that
> defendant's theory was not credible may have been presented differently, a prosecutor
> need not state arguments in the blandest possible way. *Matuszak, supra* at 55-56.
> Further, a prosecutor may argue from the evidence that a witness, including the
> defendant, is not worthy of belief. *People v. Launsburry*, 217 Mich App 358, 361;
> 551 NW2d 460 (1996).  Viewed in the context of the record and in light of defendant's
> theory, the argument was not improper.  In the absence of an objection by the defense,
> prejudice was dispelled by the trial court's instruction that attorney arguments are not
> evidence. *Matuszak, supra* at 58.

*Ewing*, 2005 WL at *3.

The Michigan Court of Appeals' determination is not contrary to, nor an unreasonable

application of, federal law or the facts.  It is clearly inappropriate for a prosecutor to make

personal attacks on a defendant or defense counsel. *See, e.g., United States v. Collins*, 78 F.3d

1021, 1040 (6th Cir. 1996).  Prosecutors may not "make unfounded and inflammatory attacks on

the opposing advocate," *Young*, 470 U.S. at 9, "or argue that counsel is attempting to mislead the

jury." *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008).  Prosecutors may, however, highlight

inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005),

and point out the lack of evidence supporting the defense theory.  *United States v. Forrest*, 402

F.3d 678, 686 (6th Cir. 2005).

 A prosecutor's description of defense counsel's argument as a red herring, a smoke

screen, or a distraction is not *per se* improper.  *See United States v. Bernard*, 299 F.3d 467,

487-88 (5th Cir. 2002); *United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992).  Such

arguments can be reversible error when the prosecutor makes "personal, unsubstantiated attacks

on the character and ethics of opposing counsel" and accuses defense counsel of conspiring with

the defendant to fabricate testimony.  *See United States v. Holmes*, 413 F.3d 770, 775 (8th Cir.

2005).  Here, the prosecutor's references to Petitioner's defense as "laughable" and a "bucket of

whoppers" and characterization of the defense as "desperate" were not personal attacks on

defense counsel.  The comments attacked the defense's theory on the merits and urged the jury to

question the credibility of Petitioner's testimony.

 Even though "[a] prosecutor should not give his own opinion as to the credibility of

witness[,] . . . this does not mean that the prosecution cannot attack the defendant's credibility or

even assert that the defendant is lying." *West*, 550 F.3d at 565 (internal citations omitted).  A

prosecutor may argue from the facts that a witness is (or is not) worthy of belief.  *See Portuondo

v. Agard*, 529 U.S. 61, 69 (2000).  "Where there is conflicting testimony, it may be reasonable to

infer, and accordingly to argue, that one of the two sides is lying." *Collins*, 78 F.3d at 1040.  The

prosecutor's references in this case to the Petitioner as a liar telling a "self-interested story,"

"guilty as sin," "the Terminator," and "Miss Congeniality" were permissible attacks on

Petitioner's credibility.  Petitioner has failed to demonstrate that the prosecutor's argument was improper or that it rendered her trial fundamentally unfair.

Further, while the prosecutor's language was florid and dramatic, it did not deprive Petitioner of a fair trial.  The prosecutor's remarks were not misleading in nature.  Moreover, the trial court's instructions, which stated that the attorneys' comments were not evidence, that Petitioner was innocent until proven guilty, and that the prosecution had the burden of proving guilt beyond a reasonable doubt alleviated any potential prejudice.  *See, e.g., Russ v. Stegall*, 2000 WL 791753, *4 (E.D. Mich. June 8, 2000).  Petitioner has failed to establish that the prosecutor's remarks, even if improper, were so flagrant as to deny her a fair trial.  Habeas relief is not warranted on this claim.

Petitioner also alleges that the prosecutor committed misconduct by vouching for the credibility of the surviving complainants and the responding police officers.  The prosecutor argued the following in his rebuttal:

> Ladies and gentlemen, nobody else has reason to lie. Booker Washington and Alan Sharp were shot.  It is their motive to get the right person held accountable for what they did, that's why Booker's on tape saying, yeah, it was my sister that did it, and that's why he testified it's my sister that did it.  Their motive is to tell the truth.  The police's motive is to tell the truth. They are doing their job, they don't know her.  They get into trouble if they get caught lying, the police---the police--the police department doesn't like that.  They don't have any reason to lie.  Sergeant Hosmer he doesn't know her, he has not go [sic] reason to lie yet all these people are lying, gee, isn't that interesting.

Tr., 10/22/03 at 967-68.

Improper vouching occurs when a prosecutor expresses a personal belief in a witness's credibility or makes comments that imply that he has special knowledge of facts not before the jury regarding the credibility of a witness.  *United States v. Jackson*, 473 F.3d 660, 670 (6th Cir.

16

2007). Such statements are improper because they can convey the impression that the prosecutor has evidence not presented to the jury that supports the charge against the defendant, thereby, infringing upon the defendant's right to be judged solely based upon the evidence presented and because the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own. *See United States v. White*, 58 F. App'x 610, 617-18 (6th Cir. 2003) (citing cases). Moreover, a prosecutor's argument that a witness has no reason or motive to lie does not constitute improper vouching. *See Jackson*, 473 F.3d at 672; *Zerom v. Vasbinder*, 2008 WL 4534148 (W.D. Mich. Sept. 30, 2008).

The Michigan Court of Appeals held that the prosecutor's statements were not improper for three reasons: (1) the prosecutor did not imply that he had special knowledge regarding the truthfulness of the witnesses; (2) the prosecutor did not comment on whether he had any personal knowledge or beliefs regarding the witnesses' truthfulness; and (3) the prosecutor's statements were a direct response to the Petitioner's argument that the police and the complainants were lying about the events of the night in question. *Ewing*, 2005 WL at *3. The Michigan Court of Appeals' decision is neither contrary to clearly established federal law, nor an unreasonable application of the law or facts of this case. Therefore, Petitioner is not entitled to habeas relief on her improper vouching claim.

Petitioner also claims that the cumulative effect of the prosecutor's conduct rendered her trial unfair. The Michigan Court of Appeals denied relief on this claim because Petitioner failed to present any actual error and because "in light of the overwhelming evidence of defendant's guilt, any prosecutorial misconduct that may have occurred was not outcome determinative and does not require reversal." *Ewing*, No. 252558 at *3 (citation omitted). This decision is neither

17

contrary to Supreme Court precedent nor an unreasonable application thereof.  The Sixth Circuit has noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief."  *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). Furthermore, given the Court's determination that her individual prosecutorial misconduct claims lack merit, Petitioner cannot establish that habeas relief is warranted based upon cumulative error. *See Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006).

Lastly, Petitioner asserts that defense counsel was ineffective for failing to object to the prosecutor's alleged misconduct discussed *supra*.  Given the Court's determination that those claims lack merit, however, Petitioner cannot establish that counsel erred or that she was prejudiced by counsel's conduct under the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984).  Defense counsel cannot be deemed deficient for failing to make a futile objection or motion.  *See McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996) (stating that "[i]t is not ineffective assistance to fail to raise erroneous claims.").

B.    Sentencing Claim

Petitioner also asserts that she is entitled to resentencing because the trial court failed to adequately consider the domestic violence that she claimed to have suffered at the hands of Smithers.  Specifically, Petitioner claims that the trial court should have considered the battered-spouse syndrome as mitigating evidence similar to a person's mental retardation or diminished capacity in determining Petitioner's sentence.  Respondent contends that Petitioner's claim is not cognizable in habeas corpus review.

As an initial matter, the Court notes that Petitioner's sentence of 31 years, three months to 50 years imprisonment is within the statutory limits for the crime of second-degree murder.  *See*

18

Mich. Comp. Laws§ 750.317.  Claims that arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law.  *Lucey v. Lavigne,* 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).

Petitioner's claim that certain offense variables of the sentencing guidelines were incorrectly scored under Michigan law because the trial court did not consider the domestic abuse fails to state a claim upon which habeas relief can be granted because it is a state-law claim.  *See Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006).  It is well-established that federal habeas relief does not lie for perceived errors of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  State courts are the final arbiters of state law, and the federal courts will not intervene in such matters.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987).  Furthermore, the record indicates that the trial judge was aware of the alleged domestic abuse in calculating the offense variables, but rejected Petitioner's argument that the alleged abuse warranted a reduction in points.  Thus, Petitioner is not entitled to relief on the claim relating to the calculation of the sentencing guidelines.

To the extent that Petitioner claims that the trial court failed to afford her individualized consideration of mitigating evidence, she fails to state a claim upon which habeas relief can be granted.  The Supreme Court has limited its holding concerning mitigating evidence to capital cases.  *Alvarado v. Hill,* 252 F.3d 1066, 1069 (9th Cir. 2001) (citing *Harmelin v. Michigan,* 501 U.S. 957, 996 (1991)); *see also Engle v. United States,* 26 F. App'x 394, 397 (6th Cir. 2001) (Eighth Amendment does not require consideration of mitigating factors at sentencing in

19

non-capital cases).  Because petitioner had no constitutional right to consideration of mitigating evidence, the state trial court's decision not to reduce her sentence based upon the proffered mitigating evidence did not constitute a constitutional error.  *See Hastings v. Yukins,* 194 F. Supp. 2d 659, 673 (E.D. Mich. 2002) (denying habeas claim regarding sentencing court's failure to consider mitigating evidence because there is no constitutional right to an individualized sentence).

**V.     Certificate of Appealability**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition does not state a claim upon which habeas relief may be warranted. Therefore, the Court denies a certificate of appealability.

**VI.    Conclusion**

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas

relief on the claims contained in her petition

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.


s/Nancy G. Edmunds                                   
Nancy G. Edmunds
United States District Judge

Dated:  February 3, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on
February 3, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer                                   
Case Manager